# Bowser, Appellant, *v.* Philadelphia.

*Municipalities—Sewers—Connection of sewers—Ordinances of the city of Philadelphia—Act of May 16, 1891, P. L. 75.*

1. The Philadelphia ordinance of March 9, 1867, p. 68, imposing a charge of $7.50 for a permit to connect with the sewer was repealed by the ordinance of March 30, 1889, p. 142, which imposed a charge of $4.00 for such permit, and the latter ordinance was in turn repealed by the ordinance of March 30, 1895, p. 61, providing charges regulated according to various kinds of paving, and imposing a charge of $1.00 for a permit where the street is unpaved.

2. The Philadelphia ordinance of March 9, 1867, which imposes a charge of $7.50 for a permit to connect with a sewer, where the party applying had not contributed to the original construction of the sewer, and a charge of $3.00 where the party had contributed to the construction, is invalid either as an exercise of the police power, or of the taxing power, inasmuch as it involves an unfair and improper classification.

3. If a property has been benefited by the construction of a sewer it may be compelled to contribute to such construction by special assessment in the manner provided by the Act of May 16, 1891, P. L. 75, but the city cannot arbitrarily assume that the property has been benefited and exact for such benefit an excessive charge from the owner for the privilege of connecting with the sewer.

Argued Oct. 5, 1909. Appeal, No. 238, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1908, No. 4,035, for defendant on case stated in suit of Seward L. Bowser v. City of Philadelphia. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Case stated to determine liability for charges for permit to connect with sewer.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for defendant on case stated.

*A. U. Bannard,* with him *Wm. E. Caveny,* for appellant.— The liability for public work is prima facie with the public. Without the special benefit there can be no special tax: Phila. to use v. Market Co., 161 Pa. 522; West Third Street Sewer, 187 Pa. 565; City of Erie v. Russell, 148 Pa. 384.

There was no liability aside from the assessment and the lien: City v. Matchett, 116 Pa. 103; Lawrence v. City, 14 W. N. C. 421; Com. ex rel. Taylor v. Wagner, 24 W. N. C. 171; Miller v. Meadville, 14 Pa. Dist. Rep. 27.

*Ernest Lowengrund,* assistant city solicitor, with him *J. Howard Gendell,* city solicitor, for appellee.—No one can read the terms of the ordinance of 1895 without being convinced that the charges prescribed were for the breaking of the street alone, together with such incidental services, in supervising the connection, etc., as had theretofore been the subject of separate charges: Gilham v. Real Estate Trust, etc., Co., 203 Pa. 24.

The difference between assessments or taxes and such a

charge as is here in question is manifest. Such taxes or assessments operate in invitum. They must be paid by the person or property against which they are assessed, whether willingly or not: Borough of McKeesport v. Fidler, 147 Pa. 532; Fisher v. Harrisburg, 2 Grant, 291; Erie v. Church, 105 Pa. 278; Olive Cemetery Co. v. City, 93 Pa. 129.

Charges like the present one have often been sustained by the Supreme Court of this state, and by the county courts, as valid and proper regulations: Gilham v. Real Estate Trust, etc., Co., 203 Pa. 24; Com. v. Wagner, 24 W. N. C. 171; Boswell v. City, 15 W. N. C. 169; Opinions City Solicitor, Phila., 1884, pp. 80, 84; 1887, p. 45; 1889, p. 45.

That an owner desiring gas, water or sewer connections must conform to reasonable regulations with respect to payment therefor is decided among other cases in Altoona v. Shellenberger, 6 Pa. Dist. Rep. 544; Bower v. U. G. I. Co., 37 Pa. Superior Ct. 113; Miller v. Gas Co., 206 Pa. 254; Reading v. Shepp, 13 Pa. C. C. Rep. 634; Com. v. Phila., 132 Pa. 288; Girard Life Ins. Co. v. Phila., 88 Pa. 393; Brumm's App., 22 W. N. C. 137.

Ordinances allowing an abatement to those who have paid assessments upon municipal improvements, from their taxes on the same property, are valid and constitutional if duly authorized: Franklin v. Hancock, 204 Pa. 110; Erie v. Griswold, 5 Pa. Superior Ct. 132.

In many cases outside of this state similar regulations have been sustained, requiring contribution to the cost of sewers upon connection therewith, irrespective of any right to levy a municipal assessment upon the laying of the sewer, or in addition to such assessment. See Carson v. Brockton Sewerage Commission, 182 U. S. 398 (21 Sup. Ct. Repr. 860); Hill v. St. Louis, 159 Mo. 159 (60 S. W. Repr. 116); Hermann v. State, 54 Ohio, 506 (43 N. E. Repr. 990); Ranlett v. Lowell, 126 Mass. 431; 2 Dillon, Municipal Corp. (4th ed.), secs. 805 et seq.

OPINION BY PORTER, J., March 3, 1910:

The parties agreed upon a case stated which set forth the fol-

lowing facts material to the determination of the question involved: Bowser is the owner of a tract of land at the corner of Wingohocking and North Sixteenth streets in the city of Philadelphia. He erected upon this property, in 1906, thirteen houses fronting on Wingohocking street and twenty-nine houses fronting on North Sixteenth street; no one of said forty-two properties had a frontage exceeding sixteen feet. The city in the exercise of its police power had ordained that these houses, respectively, must be connected with the public sewer in the street upon which they fronted. The plaintiff, on August 16, 1906, applied to the city authorities for permits to make the sewer connections for said forty-two houses, thirteen of the connections to be made with the Wingohocking street sewer and twenty-nine with that on North Sixteenth street. He tendered to the proper officers the sum of $42.00, contending that the sum of $1.00 for each permit was all that he could lawfully be required to pay; the streets being unpaved. The officer of the city asserted that the amount which the plaintiff was by the law required to pay for said permits was $357, that is $8.50 for each permit, the said amount being made up of $1.00 charged for opening the street and $7.50 charged for making the sewer connection; and refused to issue the permits unless that amount was paid. The plaintiff would have been liable to a penalty if he had failed to connect the houses with the sewer, and he would have been liable to a penalty if he had made the connections without obtaining the permits. It was thereupon agreed between the plaintiff and the city that if the plaintiff would pay the $357 which the officer of the city demanded, such payment should not be considered voluntary, and the plaintiff should be entitled to sue for and recover any part of the charge which was excessive. The plaintiff then paid the amount under protest, and the permits were issued. It was further agreed, in the case stated, that the sewer in Wingohocking street had been constructed by the city in the year 1899, that the entire cost thereof had been paid by the city, and that no abutting property had been assessed for said construction, the same being then rural property. The sewer in North Sixteenth street had been constructed, in 1884,

by William F. Shaw, the owner of a property to the south of
that now owned by plaintiff; that Shaw had constructed this
sewer at his own expense, under the provisions of sec. 8 of an
ordinance of May 12, 1866, p. 142, by force of which the sewer
became a public one after the lapse of ten years, which period
expired in 1894. The ordinance of the city approved March 9,
1867, p. 68, provided: "That from and after May 1st, 1867, any
person who shall be the owner or lessee of premises, desiring
to connect with any of the sewers in a street, shall make ap-
plication at the Department of Surveys, upon a book pre-
pared for that purpose, and shall pay for such privilege of con-
nection the sum of $7.50 for all premises not exceeding sixteen
feet in width, . . . . except they shall have paid proportion-
ately for the construction of said sewer, in which case the sum
of $3.00 shall be paid." The second section of the ordinance
of the city approved March 30, 1895, provided that no road-
way of any street shall be opened, nor any street tunneled
"for the purpose of making connection with or repairing any
underground service laid thereunder until a permit to do so
shall have been obtained" by application to the bureau of
highways. The chief of said bureau is thereupon required
to furnish the applicant with a certificate setting forth the
charges and costs of permit as provided in sec. 3. Upon pay-
ment of the sum, "and upon the presentation of a receipt
therefor, duly signed by the receiver of taxes, the applicant
shall be entitled to receive a permit from the bureau or bureaus
having charge of the particular part or parts of the under-
ground service desired to be connected with or repaired, which
permits, duly signed by the chief of the bureau shall be full and
sufficient authority for such applicant to break the street,
subject only to the supervision of the various bureaus as pro-
vided by law." By sec. 3 of this ordinance the charges are
regulated according to the various kinds of paving laid in the
streets in which the connection is to be made, which is to be
repaved by the city authorities, and the charge for a permit
where the street is unpaved is fixed at $1.00. Both Wingo-
hocking street and North Sixteenth street at the location in
question, are unpaved. The city bases its right to retain the

amount which it compelled the plaintiff to pay upon the provisions of the ordinances above recited, contending that applicants for permits must pay the aggregate of the amounts fixed as the charge for a permit under each ordinance. The plaintiff acquired the property in question long after the city had constructed and paid for the sewer in Wingohocking street and after the sewer constructed by Shaw in North Sixteenth street had become a public sewer. He had not contributed to the cost of the construction of either of these sewers, nor had any of his predecessors in title so contributed. The court below, being of opinion that the city was entitled to exact the entire amount paid by the plaintiff entered judgment in favor of the city, and the plaintiff appeals.

The case stated, while particularly reciting the provisions of the ordinances hereinbefore quoted, specifically agreed that all acts of assembly and all other ordinances of the city bearing upon or relating to the question involved should be taken to be a part of the case stated, as if the same had been set forth at length. The counsel for both parties have, under this provision of the case stated, referred to and commented upon the effect of the provisions of an ordinance approved March 30, 1889, which ordained that thereafter "all persons desiring to connect with any water-pipe, sewer, drain or conduit, or desiring to open any public highway for any other purpose, shall pay four dollars for a permit therefor . . . . which payment shall include all privileges of connections, all services to be rendered by any officer of the city, the ferrules supplied by the Bureau of Water, and for repaving over such connections when required." The seventh section of the ordinance approved March 30, 1895, above referred to, repealed all ordinances or parts of ordinances inconsistent therewith. The appellant contends that the ordinance of March 9, 1867, was repealed by the ordinance of March 30, 1889, which was in turn repealed by the ordinance of March 30, 1895, and that, therefore, the exaction by the city officers of $7.50 as a charge for each sewer connection, under the alleged provisions of the ordinance of 1867, was without lawful authority. The appellant further contends that even if the ordinance of March 9,

1867, has not been repealed by the later ordinances, the ordinance is invalid, as applied to the sewers in question, for the reason that it is an attempt by the municipality to impose upon the owner of property a part of the cost of constructing the sewers, under circumstances and in a manner not authorized by any statute. The reply of the learned counsel for the city to the first contention of the appellant is that the ordinance of 1895 prescribed charges for the breaking of the pavement of the street alone, and has no bearing upon the charges for a permit to make connection with the sewer; and, as to the second ground of objection by the appellant, asserts that the charge of $7.50 imposed by the ordinance of 1867, for a permit to make connection with a sewer, is a charge for the use of the sewer and not an imposition upon the owner for a part of the original cost of the construction of the sewer.

The ordinance of 1867, assuming for the present that the charges thereby imposed might lawfully have been held applicable to the sewers with which the appellant desired to connect his property, related to sewers alone and charges for the privilege of making connection therewith, leaving upon the parties making the connection the duty to restore the street to its former condition. The ordinance of 1889, above quoted, changed the pre-existing system, fixed a flat charge of $4.00 for a permit to do any of the things in the ordinance designated, and relieved the party of the obligation to repave the street, which duty the city expressly assumed. What did the permit provided for by this ordinance authorize the person receiving it to do? The language of the ordinance is very broad: "All persons desiring to connect with any water-pipe, sewer, drain or conduit, or desiring to open any public highway for any other purpose, shall pay four dollars for a permit therefor." The manifest purpose of this ordinance was to require a person to take out a permit to do the thing which rendered the opening of the highway necessary; if he desired to connect with a sewer or do any other thing of which the opening of the highway was a necessary incident he must take out a permit, for which he must pay $4.00. The ordinance is not silent as to the rights which vested in the person receiving the permit; those

rights included "all privileges of connections, all services to be rendered by any officer of the city, . . . . and for repaving over such connection." The purpose and effect of this ordinance was to fix a uniform charge for permits to make connections with sewers, etc., or opening any public highway for any other purpose, and at the same time to provide for the preservation of the surfaces of streets in proper condition, by making the charge for a permit sufficient to restore the paving over the connection, which duty the city assumed. There can be no question that the ordinance of 1889 repealed all prior ordinances, including that of 1867, which imposed different charges and provided other regulations than those established by the later ordinance. The city thus assumed the exclusive right to repair its own streets; withdrawing, very properly, the right which it had formerly delegated to irresponsible parties. The uniform rate established by this ordinance for the right to make connection with a sewer, or do anything which involved opening a public highway, applied to all streets, without regard to whether they were paved or unpaved. The development of the city and the vast increase of traffic upon the streets rendered necessary the introduction of new kinds of pavement, the cost of repairing openings in which necessarily was greatly increased. The expense of restoring pre-existing conditions in an unpaved street is necessarily very much less than that involved in a street paved with sheet asphalt, after an opening has been made in the highway. This consideration no doubt led to the enactment of the ordinance of 1895, which established a scale of prices for the permits which it authorized, based upon the character of the surface of the street to be opened. The purpose for which, in nearly all cases, an owner desires to open a street is that he may connect his property with a public sewer or some other underground utility to which the land within the lines of the streets of a city may properly be subjected. The purpose is a lawful one, but its exercise is subject to proper regulation by the municipality, under its police power. In the exercise of this power the city enacted the ordinance approved March 30, 1895. Any careful reading of this ordinance can only lead to the conclusion that its pur-

pose was to regulate the "making connection with or repairing any underground service" laid under any street. The ordinance prohibits the opening of the highway until a permit to do so shall have been obtained; it bases the charges for a permit upon the character of the surface of the street; it requires the application to be made, primarily, to the bureau of highways, presumably because the officers of that bureau know whether the street is paved and, if so, the character of the pavement; it requires the chief of that bureau to furnish the applicant with a certificate setting forth the charges and costs of the permit, but it does not authorize that bureau to issue the permit. The applicant must pay the amount, which the chief of the bureau of highways has certified to be chargeable for the permit, to the receiver of taxes, who is required to sign a receipt for same. The applicant, upon presentation of this receipt, is "entitled to receive a permit from the bureau or bureaus having charge of the particular part or parts of the underground service desired to be connected with or repaired, which permit, duly signed by the chief of the bureau shall be full and sufficient authority for such applicant to break the street, subject only to the supervision of the various bureaus as provided by law;" and the city assumes the duty and reserves the right to repair the street. The ordinance repeals all prior inconsistent ordinances. The applicant, upon payment of the charges, is entitled to receive a permit from the bureau or bureaus having charge of a particular part of the underground service desired to be connected with or repaired. The applicant desires to connect with a particular part of the underground service, the ordinance requires him to pay the charge fixed and declares that upon presentation of a receipt for that payment he shall be entitled to receive a permit from the bureau having charge of that particular part of the underground service. A permit to do what? Manifestly the permit thus provided for is a permit to do the thing which he has been required to declare that he desired to do; make connection with or repair the underground service. The ordinance then provides that the permit thus secured shall be full and sufficient authority for such applicant to break the street. The permit

has been issued by the bureau having charge of the underground service, and the bureau of highways is required to respect that authority and permit the street to be opened. The applicant, having obtained his permit, is, in accomplishing the purpose of his desire, connecting with or repairing the underground service, "subject only to the supervision of the various bureaus as provided by law." The conclusion that this ordinance repealed all prior ordinances fixing different charges for permits of this character cannot be avoided. The appellant, under the ordinances of the city, could not lawfully be required by the city officers to pay more than $1.00 for each of the forty-two permits involved in this transaction.

With regard to the second contention of the appellant, that the discrimination in the ordinance of 1867 between those who had contributed to the construction of a sewer and those who had not so contributed, imposing a greater charge for sewer connection upon the latter, renders the excessive charge invalid, as to the sewers with which we are now dealing, we are convinced that the discrimination attempted by the city cannot be sustained. The argument on behalf of the city that the charge of $7.50 for each permit issued to a party who had not contributed to the original construction of the sewer is merely a charge for the use of the sewer, and not an imposition by the city of a part of the cost of the original construction, is not well founded. The ordinance does not designate this charge as one made for the use of the sewer, nor does anything in the ordinance warrant an implication that it was so intended by the city authorities. If it be assumed that the city may impose a yearly, or other periodical charge, for the use of the sewer, that charge must be imposed in a manner which fairly indicates its character. An ordinance imposing a charge for the use of a sewer, annually or for any other period, must be uniform as to all who use the sewer in the same manner and to the same extent. There might, possibly, be a classification imposing varying charges upon different classes of sewer connections, but that classification must have some relation to the use; the extent or character of the burden which the connection places upon the public sewer. A classification based upon

whether or not an owner had contributed to the cost of the original construction of a public sewer has no relation to the extent or character of the burden which any connection places upon the public sewer, cannot sustain a discrimination in charges for the use of the sewer, and is invalid. If the ordinance of 1867 be considered as an exercise of police power on the part of the city for the purpose of regulating the streets and sewers and connections made therewith, it at once becomes apparent that the charge of $7.50 for a permit to a person who had not originally contributed to the construction of the sewer, while a person who had so contributed received the same permit upon the payment of only $3.00, is a discrimination against the former not permissible in an ordinance of this character. An ordinance imposing charges in the exercise of the police power must be uniform, the charges upon all who exercise the right or acquire the privilege, under circumstances precisely similar, must be the same. There may, it is true, be a proper classification in such charges, but that classification must have some relation to the thing done or the burden imposed upon the public. No classification can be sustained which is founded upon something entirely unconnected with the act done or exercise of police supervision required or public burden at present imposed. If the ordinance of 1867 be considered as an attempted exercise of the power of taxation, it is invalid for the reason that it imposes unequal burdens upon persons who desire to connect with the sewer, and the municipality was without statutory authority to impose a local tax in this manner. That the property was rural at the time the sewers were constructed was agreed upon in the case stated, and it is conceded by counsel for the city that the Acts of April 8, 1864, P. L. 324; March 27, 1865, P. L. 791, and March 30, 1866, P. L. 354, which authorized the city to assess property for benefits resulting from construction of a sewer according to the foot-front rule, did not warrant an assessment in that manner in these cases. The sewer on North Sixteenth street was constructed and paid for by Shaw, the cost and expense of such construction not having been contributed to by the city to any extent whatever. The power of the legislature

to authorize the imposition, by the municipality, of a local tax upon property peculiarly benefited by a public improvement is well recognized and firmly established. When the character of the property is such as to warrant it the tax may be imposed according to the foot-front rule, and in other cases according to the benefits, the effect upon the market value of each particular property, to be assessed by viewers, or in some cases by a jury. Whichever system of assessment is adopted, the foundation upon which the imposition rests is the right of the city to be reimbursed for an expenditure made for an improvement which has resulted in a benefit peculiar to the property assessed, as distinguished from that accruing to the general public. The principle upon which taxation of this nature rests is not to be expanded so as to permit the imposition of a special local tax upon property for benefits alleged to have resulted from a work which has cost the municipality nothing. No local special assessment for benefits alleged to have resulted from the construction of the North Sixteenth street sewer, which was built and paid for by Shaw, could, therefore, be sustained. The sewer in Wingohocking street was, in 1899, built and paid for by the city; the property was then rural, and if it was peculiarly benefited by the construction of the sewer the Act of May 16, 1891, P. L. 75, and its supplements afforded a means, and the only means, of imposing and collecting a special local tax to the amount of those peculiar benefits. The right of the city to exact and the liability of the property to pay, such special assessment, must be determined under the provisions of the statute referred to and its supplements. It cannot be arbitrarily assumed, under that statute, that property has been benefited because a sewer has been constructed in the street upon which it abuts, nor, even assuming that it has been benefited, can the amount of the benefits be determined in any other manner than that by the statute provided. The construction of a sewer may benefit or it may injure abutting property; the determination of the question may be dependent upon the nature of the soil, whether the property is above or below grade and other facts peculiar to each case: Fyfe v. Turtle Creek Borough, 22 Pa.

Superior Ct. 292. With regard to this particular sewer it was not within the power of the city to determine arbitrarily, by ordinance, that the property had been benefited by the construction of the sewer and exact an arbitrary charge, as a compensation for such benefits, by requiring the appellant to pay more for a permit to connect with the sewer because he had not contributed to the cost of the original construction.

The only charge which the officers of the city could lawfully exact for the forty-two permits issued to the appellant was that provided for by the ordinance of March 30, 1895, which, the streets being unpaved, was $1.00 for each permit, and he is entitled to judgment for the excessive amount collected.

The judgment is reversed and judgment is now entered in favor of the plaintiff and against the defendant for $315, with interest from August 16, 1906, and costs.