Turley, et al. *v.* North Huntingdon Township
Municipal Authority, et al.

Argued February 23, 1972, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*James P. McKenna, Jr.,* with him *Alvin P. Brannick,* for appellants.

*B. Patrick Costello,* with him *Costello, Snyder, Berk & Horner,* for appellees.

OPINION BY JUDGE WILKINSON, JR., April 7, 1972:

In *Ronald V. Vener, et ux. v. The Municipal Sewer and Water Authority of Cranberry Township,* 5 Pa. Commonwealth Ct. 123, 289 A. 2d 506 (1972) (filed even date), the Authority was charged with an abuse of discretion in making a different charge to old customers and new customers. We held that it was within the proper exercise of the Authority's discretion, when properly supported by evidence. Here we have the Authority charged with an abuse of discretion when it failed to make a difference in the charge. Again, we must hold that an Authority has not abused its discretion, for there is competent evidence on which it made its decision.

Appellants, who represent 962 families, are customers of the North Huntingdon Township Municipal Authority (Authority), a municipal authority created by North Huntingdon Township pursuant to the Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §301, *et seq.,* to provide, *inter alia,* sewage collection and treatment services to the residents of North Huntingdon Township. Prior to the creation of the Youghiogheny Sewage Project, appellants' sewage passed through private sewer lines in the Township into the Borough of White Oak and from there to the treatment plant of the City of McKeesport.

The Authority constructed its own sewage treatment facility as well as sewer lines to 1811 new customers

who heretofore had not been connected to a centralized sewage collection system. Appellants' sewer lines were connected to the new sewer lines and their sewage was treated by the Authority's treatment plant.

Appellants had paid a rate of $71 per year to the Authority prior to the completion of the Youghiogheny Sewage Project. Upon completion of the project, appellants, along with the 1811 new customers, were charged and paid a rate of $91 per year. It is this latter rate of $91 per year which appellants claim is unreasonable with respect to the old customers.

The basis of appellants' claim is that using a portion of their $91 per year rate to finance the construction of a collection system to new customers is a manifest abuse of discretion on the part of the Authority.

The Authority elected to raise the major portion of the cost of construction of the new sewer lines by assessing the properties benefited, improved, or accommodated at ten dollars per front foot, plus charging a tapping fee of $100. This procedure raised $1,810,000 by assessments plus an undetermined amount[1] from tapping charges. The total cost for 181,000 front feet of sewer lines was estimated to be $2,996,000. It appears uncontradicted that the actual cost of construction of the sewer lines exceeded the amount raised by assessments and tapping charges.

Before reaching the question of the reasonableness of the rate imposed upon appellants, it is necessary to decide whether the Authority acted properly in using simultaneously two powers granted by Section 4 B of the Municipality Authorities Act of 1945, 53 P.S. §306, to raise the money necessary to finance the cost of construction of the new sewer lines.

---

[1] Our arithmetic indicates that if all new customers paid the $100 tapping charge, this would raise an additional $181,000 for a total of $1,991,000, still short of the $2,996,000 cost.

Sections 4 B(h) and (s) of the Municipality Authorities Act of 1945, 53 P.S. §§306.B(h) and (s), provide, in part:

"B. Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers: . . .

"(h) *To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates,* to be determined exclusively by it, *for the purpose of providing for* the payment of the expenses of the Authority, *the construction,* improvement, repair, maintenance and operation *of its facilities and properties,* the payment of the principal of and interest on its obligations, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations, or with the municipality incorporating or municipalities which are members of said Authority or with any municipality served or to be served by said Authority, and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the area served: . . . Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the project is located. The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service. . . . (Emphasis added.)

"(s) *To charge the cost of construction of any sewer* constructed by the Authority against the properties benefited, improved, or accommodated thereby accord-

ing to the front foot rule. Such charges shall be based upon the foot frontage of the properties so benefited, and shall be a lien against such properties. . . ." (Emphasis added.)

After a careful inspection of this statutory language, we cannot conclude that the Authority is prohibited from using these two methods simultaneously to finance the cost of construction of new sewers. The language of the paragraph conferring the general grant which precedes these two subsections clearly indicates that an Authority is granted, has and may exercise all powers necessary or convenient including the two powers in issue here. In the absence of any restrictive wording, we can only conclude that the General Assembly intended that authorities be allowed to use both sections simultaneously where necessary. In *Whitemarsh Township Authority v. Elwert,* 413 Pa. 329, 196 A. 2d 843 (1964), the Supreme Court was faced with the issue of whether an authority could simultaneously use Sections 4 B(r) and 4 B (s) to assess the cost of construction of new sewers. The court found no restriction on the simultaneous use of these two different methods to determine a property owner's assessment.

We, therefore, conclude that the Authority acted properly in using Sections 4 B(h) and 4 B(s) simultaneously.

Crossing the first hurdle, we proceed to the primary issue of whether the rate of $91 per year is reasonable and uniform as dictated by the requirements of Section 4 B(h) of the Municipality Authorities Act of 1945, 53 P.S. §306 B(h). Appellants do not contend that the rate is not uniform inasmuch as the rate of $91 per year is applicable to all residential customers of the Authority, but rather that the very fact of uniformity makes the rate unreasonable with respect to the old customers. We do not agree.

Our scope of review in these matters has been stated by our Supreme Court to be as follows: ". . . courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion." *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 573, 109 A. 2d 331, 335 (1954).

To meet their burden of showing a manifest abuse of discretion on the part of the Authority, appellants rested their case on the testimony of one of their own number to show that appellants, as old customers, were being unfairly discriminated against by the uniform rate. Appellants' witness testified that the cost of construction of the new sewers was $2,996,000. Based on this $2,996,000 figure, appellants claim that the actual cost of construction is approximately $16.50 per front foot. Therefore, appellants reason that inasmuch as the Authority assessed the new customers only $10.00 per front foot, a uniform rate which requires that the old customers assist in making up the difference is unreasonable. On cross-examination, appellants' witness testified that he had no knowledge as to any agreements between the Authority and White Oak Borough

or the City of McKeesport through which appellants' sewage was transported and treated prior to the establishment of the project.

In rebuttal, the Authority presented the testimony of its financial advisor who stated that it would not have been possible to finance the Youghiogheny Sewer Project through the sale of bonds where the assessment rate was pegged at $15.00 or $16.00 per front foot. He stated that in western Pennsylvania, bond issues of this nature normally were backed by a $10.00 per front foot assessment. In addition, this witness testified that the interest rate which would have to accompany a bond issue backed by an assessment of $15.00 or $16.00 per front foot would have exceeded the legally permissible interest rate. The financial advisor did testify that he thought a bond issue backed by a $10.90 per front foot assessment was salable, although it would have produced an additional financing cost and been more difficult to sell. The project engineer testified in rebuttal that the Authority considered various proposals which included different rates for the old and new customers as well as the uniform rate which was finally adopted. Their testimony clearly shows that the Authority took into consideration many factors, including delinquency of accounts, tapping charges, estimated revenues, in determining that a uniform rate was fair and equitable to both new and old customers, and that more than just the cost of paying for the new sewers went into the rate increase for the old customers. While the Authority may well have chosen an alternative method to finance the cost of construction of the new sewers which would have been more favorable from appellants' point of view, we cannot find that it committed a manifest abuse of discretion in not doing so.

The burden of proof is on appellants to show that the Authority committed a manifest abuse of discretion.

*Shirk v. Lancaster City,* 313 Pa. 158, 169 A. 557. (1933). *Bloomsburg Municipal Authority v. Bloomsburg Cooperative Canners, Inc.,* 203 Pa. Superior Ct. 393, 199 A. 2d 502 (1964). The appellants have not met this burden.

The order of the lower court is affirmed.