Vener, et ux. *v.* Cranberry Township Municipal Sewer and Water Authority.

Argued February 24, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Joseph A. Del Sole*, with him *Girman & Del Sole*, for appellants.

*Leonard L. Stewart*, with him *Edward L. Symons, Jr.*, and *Reding, Blackstone, Rea & Sell*, for appellee.

OPINION BY JUDGE WILKINSON, JR., April 7, 1972:

In 1960, the Municipal Sewer and Water Authority of Cranberry Township (Authority) was organized pursuant to the Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §301, *et seq.*, for the purpose of supplying sewage and water service for residential and commercial users in Cranberry Township. Following its organization, the Authority purchased from the Fernway Water Company, a water distribution system serving the Fernway area of the Township at a cost of $71,000. The acquisition of the water system serving the Fernway area was financed by a bond issue in 1960. In 1963 the Authority acquired the water distribution system serving the Sun Valley area of the Township and connected that system to the system serving the Fernway area, the Fernway water system wells becoming the source of water for both areas. The record is silent with respect to how this acquisition was accomplished and what cost was involved, if any.

Inasmuch as the composite system was not adequate to serve other areas of the Township, the Authority embarked on a program in 1964 to construct a high pressure water system to serve other areas of the Township (hereinafter the General Township water system), connect the Sun Valley water distribution system to the new General Township water system, and retire the bonds issued in 1960 to finance the purchase of the Fernway water system. To accomplish these objectives, the Authority incurred a bonded indebtedness of $1,-

000,000, of which amount $256,000 was used to construct a booster pumping station, a water storage stand pipe, and water lines necessary to serve the General Township areas. Upon completion of the General Township water system, the Sun Valley water distribution system was disconnected from the Fernway water system and connected to the General Township water system. It should be noted at this point that the composite water system which served both the Fernway and Sun Valley areas was a low pressure system, but the Sun Valley water distribution system was capable of being operated as a high pressure system. It was for this reason that when the high pressure General Township water system was completed, the Sun Valley water distribution system was transferred to the new high pressure system. Upon completion of the objectives of the 1964 bond issue, the Authority established a higher rate for residential users in the General Township areas than the rate for the Fernway and Sun Valley areas which was maintained at its pre-1964 level. It was this action of the Authority that precipitated this suit in 1970.

The appellants contend (1) that the Authority must set a uniform water rate for all residential users throughout the area serviced by the Authority, and (2) that differing rates charged to residential users in the Sun Valley area and the General Township area are unreasonable where both areas are served by the same high pressure system, water is taken from the same source, and where the same costs are attributable to supplying water to both areas.

The answer to appellants' first contention is found by examining the language of Section 4 B(h) of the Municipality Authorities Act of 1945, 53 P.S. §306 B(h), which states:

"B. Every Authority is hereby granted, and shall have and may exercise all powers necessary or con-

venient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers:

. . . .

"(h) To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, the payment of the principal of interest on its obligations, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations, . . . and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served: . . ."

There is simply no limiting language present which would require an authority to set a uniform rate for all residential users in the area served by the authority. Implicit in this statement is a recognition that an authority may set different rates for the same type of user where the basis for the distinction is reasonable and the rate established is uniform within a given classification.

With respect to appellants' second contention, the burden is upon appellants to show the impropriety of the rates set by the Authority. *Shirk v. Lancaster City*, 313 Pa. 158, 169 A. 557 (1933). *Rankin v. Chester Municipal Authority*, 165 Pa. Superior Ct. 438, 68 A. 2d 458 (1949). *Bloomsburg Municipal Authority v. Bloomsburg Cooperative Canners, Inc.*, 203 Pa. Superior Ct. 393, 199 A. 2d 502 (1964). They have not met this burden. Appellants have shown (1) that the residents of the Sun Valley and General Township areas both

have the benefit of high pressure systems, (2) that the source of water for both areas is the same, and (3) that the Authority supplies water to schools which are located in the General Township areas at a rate below any other areas which bears no relation to the cost of service. There is no evidence to support their contention that the costs involved in supplying the two areas are the same, the evidence clearly being to the contrary. Appellants have presented some evidence to the effect that the Authority's position with respect to various considerations involved in the makeup of sewage rates is inconsistent with respect to similar considerations involving water rates. We are not persuaded by this evidence.

Considering all of appellants' evidence together, it is insufficient to establish, as a matter of law, that the Authority has committed a manifest abuse of discretion in establishing two different water rates as between residential users. *See Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 573, 109 A. 2d 331, 335 (1954). *Turley v. North Huntingdon Township Municipal Authority,* 5 Pa. Commonwealth Ct. 118, 289 A. 2d 509 (1972) (decided even date).

In fact, the cost and revenue data provided by the Authority clearly shows that a reasonable basis exists for the different rates. Among other considerations, the Authority took into account the cost of debt service on the 1964 Bond issue, and apportioned it according to the respective capital costs of the systems. This data also shows that the cost of service per 1,000 gallons to residential users in the Fernway-Sun Valley areas ($0.48) is far below the cost of service per 1,000 gallons to residential users in the General Township areas ($1.67). When the costs are compared to the revenues from residential users in the Sun Valley-Fernway areas ($0.71) and the General Township areas ($1.37), it is

seen that the Sun Valley-Fernway rate results in revenue exceeding cost, while the reverse is true in the General Township areas.

The order of the lower court is affirmed.