216

## Whittington v. Municipal Sewer and Water Authority

*Norman D. Jaffe,* for plaintiff.
*Anthony P. Picadio,* for defendant.

DILLON, *J.*, December 10, 1973—This proceeding questions the reasonableness of sewer rates and must be filed in law for the court to have jurisdiction, but was filed in equity: Calabrese v. Collier

Township Municipal Authority, 430 Pa. 289, 297, 240 A. 2d 544 (1968). Therefore, it will be transferred to the law side of the court.

The action involves the charging of a $200-per-dwelling-unit sewage treatment and tapping fee against plaintiff by defendant which plaintiff contends should not be a flat $200-per-dwelling-unit fee, but should be based on estimated water use correlated with the charges for residential premises as provided by defendant's regulations for other types of premises than residential.

The court finds that the sewage treatment and tapping fee of $200-per-dwelling-unit is reasonable and uniform under all the circumstances, defendant has not been guilty of arbitrary and capricious action in its charging of the fee nor will it realize an unreasonable rate of return via such charge.

Plaintiff is in the general commercial and residential construction business. It is a partnership which has been granted a permit and has begun construction of a planned unit development (multiple-family dwellings) called "Old Towne" in Cranberry Township, which eventually contemplates the erection of 27 separate buildings. Each of the three buildings completed and occupied at the time of trial contains four two-bedroom dwelling units, one three-bedroom dwelling unit and one one-bedroom dwelling unit.

Plaintiffs have established a policy whereby up to six adults may occupy the three-bedroom dwelling units, four adults may occupy the two-bedroom dwelling units and two adults may occupy the one-bedroom dwelling units. Therefore, the average "potential" occupancy of each apartment is four adults, but at the time of trial actual occupancy was

about 2.7 or 2.8 persons per unit. However, plaintiff has not changed its policy on this matter and will not limit its average occupancy per unit to less than their maximum potential occupancy permitted by this policy.

No multiple-family apartment development had been constructed within defendant's service area before January 1972. Plaintiff applied to defendant for water and sewage service to this project in October 1971, and defendant's governing board undertook the evaluation of the $200 tapping fee as it applied to multiple-family dwelling units and to mobile home parks.

Defendant, pursuant to act of May 2, 1945, P.L. 382, as amended (1971), 53 PS §306(B)(h) of the Pennsylvania statutes which give the municipal authority power to fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates, had established a schedule of fees for its services in its service area.

53 PS §306(B)(t) (1963) gives the authority power:

"To charge a tapping fee whenever the owner of any property connects such property with a sewer system or water main constructed by the Authority which fee shall be in addition to any charges assessed and collected against such property in the construction of such sewer or water main by the Authority or any rental charges assessed by the Authority."

Pursuant to the above authority, defendant has promulgated the following regulations:

"a. Sewage treatment and connection fee. All residential premises shall be subject to a sewage

treatment and connection fee of $200 plus the cost of the connection. All other types of premises shall be subject to a sewage treatment and connection fee plus the cost of the connection, the fee to be computed by the Authority on the basis of estimated water use correlated with the charges for a residential premises.

"b. Connection charges."

The regulations define "premises" as:

"2.36 PREMISES—The word 'premises' as used herein, shall be the property or area, including the improvements thereon, to which sewage service and/or water service, is or will be furnished, and as used herein, shall be taken to designate: . . .

"(e) Each apartment, office or suite of offices, and/or place of business located in a building or groups of buildings, even though such buildings in a group are inter-connected by a tunnel or passageway, covered area-way or patio, or by some similiar means or structure, or . . .

"(1) Each dwelling unit in a home or building, a dwelling unit being defined as a building or portion thereof with exclusive culinary facilities designed for occupancy and used by one person or by one family (household), or . . ."

At the request of defendant's governing board, in January 1972, defendant's consulting engineer submitted to the board a letter which suggested that plaintiff's planned unit development was included in the term "residential premises" under the regulations, but that the board should permit multiple-family developments to pay a smaller tapping fee based on estimated water consumption. A study of water consumption based upon an 18-month study of meter readings of single-family dwellings

versus multiple-family dwelling units prepared for the Warminster Township Planning Commission and the Bucks County Planning Commission indicated that, in other areas of the state, single-family dwelling units and multiple-family dwelling units were treated the same for sewage purposes.

Plaintiff's dwelling units are to be used exclusively for residential purposes and commercial uses of the property are not permitted by plaintiff's lease. Each dwelling unit contains separate culinary facilities.

Defendant treated a Cranberry Mobile Home Park different from plaintiff under the regulations in that it did not charge them a $200-per-unit tapping fee. However, plaintiff is charged a quarterly sewage fee based upon the amount of water that is consumed by each dwelling unit like other users in Cranberry Township.

For the proposition that defendant's actions are unreasonable, plaintiff first contends that defendant has misapplied its own regulations regarding plaintiff by including it in the term "residential premises" when it should be included under the term "other type of premises." In light of the fact that these premises are to be used exclusively for residential purpose, on their face they are "residential premises." See Jernigan v. Capps, 187 Va. 73, 45 S. E. 2d 886 (1948); Brandenbury v. Country Club Building Corporation, 332 Ill. 136, 163 N. E. 440 (1928).

Plaintiff did not charge the Cranberry Village Mobile Home a $200-per-unit tapping fee on one previous occasion. Plaintiff cites this occurrence as evidence of defendant's arbitrary action and a denial of equal protection under the Federal Constitution. Plaintiff submits Kerns v. Kane, 363 Pa. 276,

69 A. 2d 388 (1949), as authority for the proposition that municipal authorities "must treat all persons in the same circumstances alike." There, the court held that to satisfy the Pennsylvania Constitution's requirement that all laws regulating the holding of election shall be uniform throughout the State, an election law must treat all persons in the same circumstances alike. See Yezioro v. North Fayette County Municipal Authority, 193 Pa. Superior Ct. 271, 164 A. 2d 129, 133 (1960). See also Bowser v. Philadelphia, 41 Pa. Superior Ct. 515, 523 (1910); White's Appeal, 287 Pa. 259, 268, 134 Atl. 409 (1926).

It is not certain that the mobile home developments and plaintiff fall into the same class, as there is no evidence on the record that they are similiar in the burden that they place on sewage treatment facilities. Moreover, there are sometimes cogent reasons for treating people in the same class differently: Vener v. Municipal Sewer and Water Authority of Cranberry Township, 5 Pa. Commonwealth Ct. 123, 289 A. 2d 506 (1972). However, even assuming that both of the above are in the same class, defendant now states that mobile home developments are to be treated the same as plaintiff for all future sewer-tapping fee purposes and both are included in the term "residential premises" in the regulation. It seems that the mobile home development was treated under an exception to the rule because the mobile home development was included in the term "residential premises" under the rules in force at that time, so they should have paid a $200-per-dwelling-unit tapping fee.

It might be that the authority made an illegal error in judgment in not forcing the mobile home development to pay a $200-per-unit tapping fee (see

American Aniline Products, Inc. v. Lock Haven, 288 Pa. 420, 135 Atl. 726 (1927); see also Beauty Built Construction Corporation v. City of Warren, 375 Mich. 229, 134 N. W. 2d 214 (1965)), because plaintiff is the one that is being charged the correct fee under the regulations, but plaintiff is not in court contending that the correct sewage-tapping fee be levied against the mobile homes development. Instead, it is here contending that it too be permitted to pay a fee other than that provided by the regulation. This, the court will not sanction. Uniformity in this sense means that all that fit within the ambit of terms in regulations must pay on the basis that those terms provide.

Plaintiff alleges that all this is a denial of equal protection under the United States Constitution. However, the mere error in judgment of defendant not enforcing the regulation against the mobile park development does not abridge this right: Sunday Lake Iron Co. v. Wakefield Township, 247 U.S. 350, 353 (1918); Mackay Tel. & Cable Co. v. Little Rock, 250 U.S. 94, 100 (1919); Beck v. Washington, 369 U.S. 541, 554-55 (1962).

Moreover, the scope of review in this case by this court is limited to correction of manifest or flagrant abuse of discretion or purely arbitrary action by the authority: Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 109 A. 2d 331, 334 (1954), appeal dismissed 350 U.S. 806 (1955); Turley v. North Huntingdon Township Municipal Authority, 5 Pa. Commonwealth Ct. 116, 289 A. 2d 509, 512 (1972). Furthermore, the burden of showing abuse of discretion is on plaintiff: Shirk v. Lancaster City, 313 Pa. 158, 169 Atl. 557 (1933); Greenville Borough v. Guerrini, 208 Pa. Superior Ct. 42, 46, 220 A. 2d 366 (1966). Plaintiff has not overcome

that burden merely by showing one error in judgment by the authority not enforcing its regulations in their true tenor against one member in its class.

Plaintiff relies on the fact that the consulting engineer of defendant recommended that multiple-family dwelling units be treated differently from single-family dwelling units for sewage-tapping fee purposes. However, defendant board had other reliable evidence in its possession which indicated the falseness of this recommendation. Although plaintiff cites Rankin v. Chester Municipal Authority, 165 Pa. Superior Ct. 438, 68 A. 2d 458, 463 (1949), for the proposition that one criteria which an authority can use in establishing rates is "reliable computations of experts of recognized competence," an authority is no more bound to follow these expert's opinions when other information indicates that it is incorrect than are the courts: Yezioro v. North Fayette County Municipal Authority, id. at 137-38.

Moreover, while it pays a $200-tapping-fee per dwelling unit under the ruling in this case, each of plaintiff's units is charged a quarterly sewage fee based upon the amount of water that is consumed by each unit. Each unit has a water meter and the total amount of sewage charges paid over the useful life of each unit is far greater than the $200-tapping-fee. Therefore, almost all of the sewage fee paid for and by each dwelling unit of plaintiff is based upon actual water consumption. The courts have upheld as reasonable flat rate rental charges for each receptacle on the premises of motels, when their water usage rates were greater than the flat rate water usage rates charged residential users. The motels paid 271 percent of their water rent for use of the sewers while the residential user paid 113

percent of his water rent for use of the sewers in Hickory Township v. Brockway, 201 Pa. Superior Ct. 260, 192 A. 2d 231 (1963).

Plaintiff's reliance on Sedgwick Gardens v. Towamencin Township Municipal Authority, 80 Montg. 98 (1962), for the proposition that a court might order changes in sewage rates of multiple-family dwelling units if it is proven that they use appreciably less water than single-family dwelling units is equally misplaced. There, defendant furnished sewage facilities for plaintiff's apartments and charged plaintiff for each apartment the same as it did for each single-family dwelling. In a suit in equity, plaintiff alleged that the amount of sewage water flowing from the average single-family dwellings was "appreciably greater 'than the flow on the average from one of its apartments,'" thus the rates were unreasonable and should be reduced. The court overruled defendant's preliminary objections in the nature of a demurrer and stated that if plaintiff proves that the average quantitative use of the sewers by all apartment dwellers in the township was so much less than the average use of the sewers by all single-family dwelling dwellers there, then additional rate classifications should be made and the court, not would, but might grant relief. This standard of proof was consistent with that required in Hickory Township v. Brockway, supra, where the court said appellant's burden of proof was to show that the entire system of rate rentals was inequitable: Id. at 233. Therefore, plaintiff could not prevail in the instant case merely by showing that its multiple-family dwelling units use less water than single-family dwelling units, but it would be required to prove that the average of all the multiple-family units in its service area use

appreciably less water than the average of all single-family dwelling units in its service area to even come under the reasoning of Sedgwick Gardens v. Towamencin Township Municipal Authority, supra. This it has failed to do in the record.

In addition, as previously explained, plaintiff's sewage rates are based almost entirely on water consumption. Therefore, it would be required to show, as in Hickory v. Brockway, supra, that when the entire system of rate rentals is considered, that its rates were inequitable. This the record fails to establish. Moreover, relying on statements made on equitable principles in courts of equity are suspect, since the Pennsylvania Supreme Court ruled that courts of equity no longer have jurisdiction to hear reasonableness of sewer rates cases: Calabrese v. Collier Township Municipal Authority, supra.

There is no evidence on the record regarding actual occupancy of single-family dwelling units or mobile homes in Cranberry Township. Nor has plaintiff proven that the average use for multiple-family dwelling units of water leading into sewage generation is less than the average use of water leading into sewage generation for single-family dwelling units or mobile homes. Plaintiff, however, relies on the letter by defendant's consulting engineer to defendant and on design criteria for sewage treatment plants published by the department for proof that multiple-family dwelling units use less water and, therefore, generate less sewage than single-family dwelling units. Defendant's engineer based his conclusion on an assumption of an average occupancy per unit of 3.75 for single-family dwelling units and 2.5 for multiple-family dwelling units whereas the new figure by the de-

partment based upon the 1970 census now estimates 3.5 people per residence for both. The engineer who authorized the letter testified that based on this fact and later occupancy estimates the conclusion of the letter would be changed so the letter is of no probative value on this issue.

Plaintiff contends that it should be charged less for tapping fees than single-family dwelling units because it uses less water than they do. Plaintiff also bases its difference in water usage between the two on the "design criteria" for sewage treatment plants issued by the department. There are three relevant parameters in this criteria, Biochemical Oxygen Demand (BOD), a measure of the organic load on a sewage treatment plant, people per unit and per capita water consumption. For the first two criteria, the department makes no distinction between average multiple-family dwelling units and single-family dwelling units. However, there are inconsistencies between a department publication and a department manual figure for per capita water consumption differences between the two units. One makes no distinction in water usage and the other makes a 15-gallon-per-capita water consumption distinction, being 75 gallon for single-family dwelling units and 60 gallons for multiple-family dwelling units. However, all this relates to water consumption alone and there is evidence in the record that single-family dwelling units put less water into the sewage system than multiple-family dwelling units because people who live in single-family dwelling units use water for washing their cars and watering their lawns and this water doesn't go into the sewage system. Therefore, there is no probative evidence on the record that multiple-family dwelling units place less of a bur-

den on sewage treatment facilities than single-family dwelling units and, thus, the charging of an equal tapping fee for both is equitable.

There is no evidence on the record that defendant will realize an unreasonable rate of return because of its charging of a $200-per-unit tapping fee for plaintiff.

### ORDER

Now, December 10, 1973, in accordance with the foregoing opinion, plaintiff's action questioning the reasonableness of defendant's sewer rates, to wit, the tap-in fee, is transferred to the law side of the court.

In accordance with the foregoing opinion, plaintiff's action is dismissed. Costs on plaintiff.