## Cassidy v. Old Lycoming Township

*Allen E. Ertel*, for plaintiffs.
*Scott A. Williams*, for defendant.

GREEVY, *P. J.*, May 8, 1974—This action is on plaintiffs' complaint seeking to have the court declare the increased sewer rents imposed on plaintiffs to be illegal and to require the township to charge plaintiffs the same rate as the users of the Williamsport Sanitary Authority.

## FINDINGS OF FACT

1. Plaintiffs, Daniel K. and Betty N. Cassidy, and Ronald C. and Patricia L. Lentz, reside in the "Lundy Park" section of Old Lycoming Township.

2. Plaintiffs, Benjamin J. and Betty K. Stadt, reside on Round Hill Road in Old Lycoming Township.

3. The action was brought by plaintiffs on their own behalf and on behalf of all residents of the area in Old Lycoming Township designated as "Lundy Park" and "Round Hill Road."

4. Defendant, Old Lycoming Township, is a second class township.

5. Prior to January 1, 1972, plaintiffs were serviced by the Williamsport Sanitary Authority and were charged the same rates as the Williamsport city customers. This was done pursuant to an agreement entered into between defendant and the Williamsport Sanitary Authority on August 18, 1964.

6. By 1970, the Supervisors of Old Lycoming Township had decided that the township should have its own sewerage system. A number of ordinances were enacted on November 16, 1970. Ordinance no. 56 established the sewer rental rates to be charged and referred to the area to be served as the "Garden View Area."

7. On either November 5th or 6th, 1970, Cassidy called Dale L. Metzger, township secretary, inquiring as to whether Lundy Park was to be included in the new sewer project and be subject to the new rates.

8. Metzger conferred by telephone about this with Robert L. Hinaman, chairman of the supervisors, and Metzger then sent a letter dated November 6, 1970, to Cassidy stating that Lundy Park would not be charged the new rates and would continue to be billed as usual.

9. On October 4, 1971, defendant and Williamsport Sanitary Authority entered into an agreement whereby certain township residents would continue on the Williamsport system.

10. Plaintiffs were billed the new rates as of January 1, 1972. On July 10, 1972, ordinance no. 56 was re-enacted to include but not be limited to the Round Hills areas, Lundy Park areas, and all other areas connected to the Old Lycoming Township sewer system which lie north of the city (of Williamsport) limits or are shown in the United States Census as being part of the Garden View Area of Old Lycoming Township.

11. Defendant, by ordinance, created the Old Lycoming Township Authority. The authority had the system constructed and leases the system to defendant. The authority assessed customers which received a new lateral hookup by the front footage method. The rental payment to be paid by defendant is designed to cover the cost of amortizing the bonds issued by the authority to cover the costs of construction.

12. Defendant charges a tap-on fee to customers which received a new lateral hook-up. The sewage rates charged to all customers is designed to meet

operating expenses, amortization costs and a ten-percent margin of safety.

13. The new rates charged to plaintiffs are substantially higher than the rate they were paying to the Williamsport Sanitary Authority.

14. Plaintiffs have received substantial benefits by the new sewer system.

## DISCUSSION

The original ordinance no. 56 defined the area to be included in the new system as the "Garden View Area." There was conflicting testimony as to what sections of Old Lycoming Township are included in this area. After this action was instituted, but prior to the first hearing, the ordinance was re-enacted and specifically stated what areas were to be included in the sewer district. The supervisors have the power to cure such an ambiguity, if such exists, by this re-enactment.

". . . Legislative bodies have this authority; and the action of the board of supervisors would be proper to cure an irregularity or want of authority. City of Chester v. Black, 132 Pa. 568 (1890). In this case, the Supreme Court said, at page 571, 'The principle has been repeatedly recognized in this state that, where the legislature has antecedent power to authorize a tax, it can cure, by a retroactive law, an irregularity or want of authority in levying it, though thereby a right of action which had been vested in an individual should be divested:'" Hinaman et al. v. Vandergrift, 197 Pa. Superior Ct. 140, 144 (1962).

In light of this power we find it unnecessary to decide whether plaintiffs are within the "Garden View Area."

Plaintiffs contend that they are third-party beneficiaries of the August 18, 1964, agreement between defendant and Williamsport Sanitary Authority. It is asserted the agreement is intended to be for their direct benefit. Plaintiffs rely on the following statement in 4 Corbin on Contracts, 83, §782: "Contracts made by municipalities for the benefit of their inhabitants have been held enforceable at the suit of one or more of such inhabitants in a good many cases. These are cases of a promise to render some specific service to the beneficiaries, to charge no more than specified rates, to pay damages caused to individuals by the construction of a public improvement." However, the cases cited therein concern suits against the party who has contracted to supply the service. In the instant action we are concerned with an action against a municipality that has terminated an agreement with the supplier of a service. In Brandywine Homes v. Caln Twp. Mun. Auth., 56 D. & C. 2d 437, 20 Chester 100 (1971), the City of Coatesville owned the sewer lines in the township and, following the incorporation of the authority, the system was conveyed to the authority. The authority proceeded with plans to expand the system throughout the township. The basis of plaintiffs' complaint was similar as here—they were already being adequately served at a cost greatly lower than the new rates and existing users of the system should not be saddled with the cost of expansion which they neither need nor desire. The court held that decisions concerning sewer construction and rentals were a legislative decision and that the township commissioners' exercise of discretion in matters of local public health cannot be disturbed unless the exercise of power was attended by fraud,

official misconduct or arbitrary and capricious abuse of power or discretion. See also Butterworth et al. v. Upper Moreland-Hatboro Joint Sewer Authority, 73 Montg. 286 (1956).

We find that whether or not Old Lycoming Township should have its own sewage system or remain on the Williamsport System is a legislative decision. Plaintiffs have not shown any fraud, official misconduct or abuse of this discretion by the township supervisors.

Plaintiffs also are attacking the rates charged by defendant. Defendant and the Old Lycoming Township Authority have the power to finance sewer line construction through the methods employed: Whitemarsh Township Authority v. Elwert, 413 Pa. 329 (1964); Turley et al. v. N. Huntingdon T.M. Auth. et al., 5 Pa. Commonwealth Ct. 116 (1972). Defendant has based its sewer rental rates under the authority granted in the Act of July 18, 1935, P.L. 1286, secs. 1 and 2, as amended, 53 PS §§2231 and 2232. Section 1 provides for the rentals for use of the sewage system and section 2 provides for the amount of rental charge.

In determining whether the rates as applied to plaintiffs are reasonable the court realizes the substantial increase in sewage rentals. However, our scope of review of legislative decisions is limited.

". . . [C]ourts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from

judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion:" Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 573 (1954). (Emphasis in original.)

Plaintiffs' complaint is that both old and new customers are paying the same rate and that part of their rental is used to finance the new construction. A similar claim was rejected in Turley, supra. As the Commonwealth Court has recently stated: "Although this Court may have a different opinion or judgment on the wisdom of the rates and classifications imposed by the Township, the sole question for us to consider is whether the Township has committed a manifest abuse of discretion. The burden of proving such an abuse is a heavy one and here the Appellants [plaintiffs herein] have faltered:" Glen Riddle Park, Inc. v. Middletown Twp., 11 Pa. Commonwealth Ct. 574, 581 (1974). We find there has been no abuse of discretion by the supervisors in the setting of the sewer rates.

Plaintiffs' final contention is that, by their actions, defendant is estopped to charge them rates above those charged by the Williamsport Sanitary Authority. The contention is based upon the letter written by the township secretary to Cassidy. The letter states that users of the existing system will continue to be billed as usual and will not enter into any assessments or charges for this new sewer line. A municipality, like a private corporation, is sub-

ject to the doctrine of estoppel: Breinig et ux. v. Allegheny Co. et al., 332 Pa. 474, 485, 486 (1938). Restatement of Contracts, §90, states that:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

The problem facing the court is whether the letter is a promise which may be binding on the township. The township "may be estopped to deny the authority of its agents and employees to act if it has the power to, and by its conduct does, clothe an agent with the appearance of authority [citations omitted], though it cannot be bound for an act of its agent in excess of its corporate powers, or in violation of positive law, or for an act requiring legislative or executive action:" Breinig, supra, at page 486.

The letter at most is a statement of the then present intention that the original ordinance no. 56 would not apply to plaintiffs. If the ordinance had not been re-enacted the court would be inclined to agree with plaintiffs' position. However, we do not find that the letter can operate to prevent the supervisors from later enacting a new ordinance or, as here, re-enacting ordinance no. 56 with the specific definition of the areas within the new sewer district.

The court makes one final observation and that concerns the actions of the secretary and township supervisors and the letter of November 6, 1970. One of the arguments raised by defendant was that plaintiffs were included within the original ordinance no. 56. If this is true, then the letter was a

successful attempt by the supervisors to mislead the citizens. Were the supervisors to be a bit more candid with the people concerning who would be included within the new sewer district, this lawsuit may have been avoided.

Based on the foregoing reasons we make the following

### DECREE NISI

And now, May 8, 1974, it is the decree nisi of the court that plaintiffs' complaint be dismissed. Each party to pay their own costs.

If no exceptions are filed within 20 days the decree nisi shall be entered by the prothonotary on praecipe as the final decree.