Patton-Ferguson Joint Authority, Appellant, *v.* J. Alvin Hawbaker, Appellee.

Argued January 9, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*John R. Miller*, with him *Richard L. Campbell* and *Miller, Kistler & Campbell, Inc.*, for appellant.

*Delbert J. McQuaide*, with him *McQuaide, Blasko, Brown & Geiser*, for appellee.

OPINION BY JUDGE BLATT, July 22, 1974:

The Patton-Ferguson Joint Authority (Authority) provides sewer service for the apartments of J. Alvin Hawbaker (appellee). Because of his failure to pay sewer rentals for the billing periods from the third quarter of 1969 to the fourth quarter of 1971 inclusive, the Authority filed a municipal lien for the unpaid amounts and subsequently caused a writ of scire facias to issue. In response, the appellee filed an Affidavit of Defense which challenged the rate resolution of the Authority.

The challenged rate schedule provides in part:

"A. *Residential*

Each Dwelling Unit . . . . . . . . . . . . . . . . . . . $135.40 per annum, payable at the rate of $33.85 per quarterly billing period. Each residential Dwelling Unit in a double house, in a row of connecting houses or *in an apartment building or apartments contained in a single family dwelling* shall be billed as a separate entity.

"B. *Non-Residential* . . .

1. All owners of non-residential Improved Properties shall pay sewer rates and charges at the rate of

$33.85 per quarter per annum per unit on the basis of Equivalent Dwelling Units as set forth in the following schedule:

> "Category         Equivalent Dwelling Unit
>
> . . . .
>
> f. Each hotel
> or motel            ½
> . . . per
> rental room      . . . ." (Emphasis added.)

The lower court agreed with the appellee's contention that the flat rate charge of $33.85 per quarter, when applied to one, two or three bedroom apartments as well as to separate dwelling units,[1] was an arbitrary and unreasonable charge for the service rendered to the appellee and an abuse of discretion by the Authority, and it ordered that the liens be removed. The court below gave great weight to the appellee's claim, and the evidence offered in regard thereto, that one and two bedroom apartment units could reasonably be expected to use the system less than would a single family dwelling.

The purpose and powers of the Authority have been delineated by the Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, *as amended*, 53 P.S. §306, the pertinent subsection of which provides:

"B. Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers.

. . . .

"(h) To fix, alter, charge and collect rates and other charges in the area served by its facilities at *reasonable*

---

[1] The Patton-Ferguson Joint Authority Resolution defines *dwelling unit* as "any room, group of rooms, house trailer or other enclosure occupied or intended for occupancy as separate living quarters, including toilet facilities, by a family or other group of Persons living together or by Persons living alone."

*and uniform rates to be determined exclusively by it,*
for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, the payment of the principal of and interest on its obligations, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations, or with the municipality incorporating or municipalities which are members of said Authority or with any municipality served or to be served by said Authority. . . ." (Emphasis added.) 53 P.S. §306B(h).

Our review of a rate resolution, of course, is limited to a determination of whether or not there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system. *Turley v. North Huntingdon Township Municipal Authority,* 5 Pa. Commonwealth Ct. 116, 289 A. 2d 509 (1972). "That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion." (Emphasis in original.) *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 576, 109 A. 2d 331, 335 (1954).

The burden here was on the appellee to prove that the Authority had abused its discretion by establishing a rate system which was either unreasonable or lacking in uniformity. *Vener v. Cranberry Township Municipal Sewer and Water Authority,* 5 Pa. Commonwealth Ct. 123, 289 A. 2d 506 (1972). This burden, however, has not been met and we must, therefore, disagree with the lower court's conclusion.

The appellee here attacked the Authority's classification of apartments as residential units rather than as non-residential units, for which a lower rate would be applicable. The reasonableness of any such classification, however, is clearly a matter for administrative dis-

cretion. *Brown v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 58, 31 A. 2d 435 (1943). "[A] municipality may create classifications of users so long as the charge is uniform within the classification and is reasonably proportional to the service rendered. [Citations omitted.] Since all apartments pay the same rate, it is obviously uniform." *Glen Riddle Park, Inc. and Tunbridge Corporation and Frank R. Iacobucci v. Middletown Township and Middletown Sewer Authority,* 11 Pa. Commonwealth Ct. 574, 581, 314 A. 2d 524, 527 (1974).

Moreover, the evidence presented by the appellee does not indicate that the Authority's rate classification was improper in regard to the value of service rendered. The appellee did contend that a random sampling survey had shown single family dwellings as using more water, and so requiring more sewage service than apartment dwellings. The persuasiveness of this study, however, is greatly lessened, if not entirely lost, because of its special selectivity, the small number of homes chosen for survey, and the short span of time covered.

In his attack on the reasonableness of the rate in relation to the service rendered, the appellee further emphasizes the amount of use of the service rather than its value. Sewer rental charges, however, must have a reasonable relation to the *value* of the service rendered either as actually consumed or as readily available for use, and there is evidence here to show that the availability of service for apartments and single family dwellings, based on peak requirements, was substantially the same.

We have reviewed the cases presented by the appellee which purportedly have invalidated a rate based on the *use* standard alone and have found these cases to involve *non-use* rather than amount of use. They are thus distinguishable and do not serve to resolve this case directly. For example, where a rate schedule

based on property assessment had charged rents to vacant lots and buildings which were not connected to the sewer system, it was held that the rate was not related to the value of the available service and thus was an invalid rate as well as an invalid tax. *Hamilton's Appeal,* 340 Pa. 17, 16 A. 2d 32 (1940). Also, in *North East Borough Appeals,* 191 Pa. Superior Ct. 532, 159 A. 2d 528 (1960), non-use was the reason for the invalidity of the sewer charge because the Borough itself prohibited the complainant from using the disposal system for ninety-five percent (95%) of its sewage, yet based its sewer rental on twenty percent (20%) of water use.

Where the classification of users has not been proved to be unreasonable and is clearly uniform, flat rate sewer rental which reasonably relates to the value of the service rendered may be applied. *Hickory Township v. Brockway,* 201 Pa. Superior Ct. 260, 192 A. 2d 231 (1963). When, as here, the appellee has not satisfactorily proved that such standard was not met, we must find that the rate imposed by the Authority conforms with the legislative directive.

The order of the lower court, therefore, is reversed.

---

CONCURRING OPINION BY JUDGE KRAMER:

I concur with the result only for the reason that I believe the appellee chose the wrong procedure to challenge the reasonableness of the rates and rate structure of the Authority. The same Section 4, subd. B(h) of the Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §306, subd. B(h), cited by the majority also states in pertinent part: "Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of

the county wherein the project is located, or if the project is located in more than one county then in the court of common pleas of the county wherein the principal office of the project is located. The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service." This provision says to me that once the Authority's rates are fixed and not challenged in a lawsuit filed for that purpose, those are the only rates which may be charged. Therefore, a collateral attack challenging such rates in a proceeding brought to collect for the service rendered under such established rate schedules is improper. *Cf. Northvue Water Co., Inc., v. Municipal Water & Sewer Authority of Center Township,* 7 Pa. Commonwealth Ct. 141, 298 A. 2d 677 (1972).

I find no fault with the reasoning of the majority, but I believe we need not pass upon the merits because the procedure adopted by the appellee to challenge the rates was improper. The real question before the court below was not the reasonableness of the rates, but rather only whether the Authority had properly charged the appellee for the service rendered under the established rate schedule.