## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Water Polo, I, L.P. | : | |
| | : | |
| v. | : | |
| | : | |
| West Hanover Township | : | |
| Sewer Authority, | : | No. 1283 C.D. 2024 |
| Appellant | : | Argued: April 13, 2026 |

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE LORI A. DUMAS, Judge
                    HONORABLE STELLA M. TSAI, Judge

OPINION BY
JUDGE COVEY                                                      FILED:  May 15, 2026


West Hanover Township (Township) Sewer Authority (Authority) appeals from the Dauphin County Common Pleas Court's (trial court) September 3, 2024 order (docketed September 4, 2024) reversing the Authority's determination that denied Water Polo, I, L.P. (Water Polo) relief under Act 43 of 2021 (Act 43).[1] Essentially, there is one issue before this Court: whether the Authority correctly concluded that Water Polo was not entitled to Act 43 relief.[2]  After review, this Court reverses.

The Authority is a municipal authority that provides sewer services within the Township.  On October 15, 2013, the Authority enacted Resolution 2013-

---

[1] Act 43 amended Section 5607(d)(9) of the Municipality Authorities Act, 53 Pa.C.S. § 5607(d)(9) (relating to authority rate powers).

[2] The Authority presents five issues in its Statement of the Questions Involved: (1) whether Water Polo is entitled to Act 43 relief; (2) whether the trial court applied the wrong standard of review; (3) whether Water Polo demonstrated that it met the usage requirements for Act 43 relief; (4) whether the Authority acted within its discretion by enacting Resolution 2022-A-03; and (5) whether the trial court erred in finding that the *amount billed* for Act 43 equals 180 gallons per day.  *See* Authority's Br. at 6.  Because this Court reviews the Authority's decision, not the trial court's decision, it does not address Authority questions 2 and 5.  The remaining issues are subsumed within the issue as restated by this Court, and will be addressed accordingly herein.

A-2, which established the sewer rate, effective January 1, 2013, for Domestic Establishments[3] at $624.00 per year or $156.00 per quarter. *See* Reproduced Record (R.R.) at 13. The Authority considers each apartment unit one equivalent dwelling unit (EDU) for rate purposes.

Water Polo owns the Reserve at Manada Hill (the Reserve), an apartment complex with multi-family dwellings, in the Township. On June 30, 2021, the General Assembly enacted Act 43, which became effective on August 29, 2021. Act 43 added the following language to Section 5607(d)(9) of the Municipality Authorities Act (MAA):

> The owner of multiple residential units that are served by a single water meter may periodically request the authority to adjust the amount billed by showing a minimum of [5] consecutive years of actual usage data to determine if the **amount billed** exceeds the **actual usage** by 30% or more. If the usage data shows that an adjustment is needed, the authority shall appropriately adjust the billing and use the adjusted amount going forward. When calculating the new amount, the authority may include up to 10% over the amount used. After an initial adjustment, the owner may

---

[3] Resolution 2017-A-01 defines *Domestic Establishment* as:

> [A]ny room, group of rooms, apartment, house trailer, building, or other enclosure connected, directly or indirectly, to the [s]ewer [s]ystem and occupied or intended for occupancy as separate living quarters by a family or any other group of [p]ersons living together or by a [p]erson living alone. Each apartment unit in an apartment facility is considered a Domestic Establishment. Motels and [h]otels are excluded from this definition. In the special case where multiple separate and detached dwelling units are permitted to be constructed on the same property, each separate dwelling unit shall be a separate Domestic Establishment.

Reproduced Record at 24. The Authority's Reproduced Record fails to comply with the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."). However, for consistency, the citations herein are as reflected in the Reproduced Record.

not request another adjustment for five years after the adjustment is completed.

53 Pa.C.S. § 5607(d)(9) (emphasis added).

On September 20, 2022, the Authority approved Resolution 2022-A-3, which sets forth its process and criteria for Act 43 relief. Resolution 2022-A-3 states, in relevant part:

> 5. Any qualifying owner seeking Act 43 relief shall provide five (5) years of actual water usage data prepared by a public water utility or from a well as provided by a calibrated meter. Meter calibration must be provided by a third[-]party company or agency registered with and approved by the Commonwealth of Pennsylvania.
>
> 6. Upon receipt of a complete [Billing Adjustment Application Form (]Application[)], the Authority shall determine the average actual water usage for a metered Domestic Establishment in gallons per day [(gpd)]/EDU over the prior [two] years. Such a determination shall be based on records from Pennsylvania[] American Water Company [(PAWC)[4]] or other such water provider. The Authority shall share this information with the owner/applicant.
>
> 7. **To qualify for Act 43 relief**, an owner/applicant must show that its average actual water usage in [gpd]/EDU is 30% less than the average actual water usage in gallons per day [gpd]/EDU based on all Domestic Establishments serviced by the Authority**.
>
> 8. If the owner can show the 30% less usage, the Authority will reduce the owner's sewer rate by the actual percentage, subject to an additional 10% pursuant to Act 43.

R.R. at 42 (emphasis added).

---

[4] PAWC provides water service to the Reserve. The Reserve is billed for two meters pursuant to the PAWC records. Each meter has a different number and different usage amounts. The PAWC can only supply two years of water consumption data for all users within the Authority's service area.

On December 20, 2022, Water Polo submitted the Application. Authority staff reviewed the Application, determined that it did not meet the criteria of Act 43 or Resolution 2022-A-3, and denied the Application by February 24, 2023 notice. On March 10, 2023, Water Polo appealed from the Authority's decision to the Authority Board (Board).

On May 25, 2023, a Board hearing officer held a hearing on Water Polo's appeal, at which Water Polo presented the testimony of licensed engineer Fred Ebert (Ebert), President of Ebert Engineering. Ebert explained that he determined the Authority's *amount billed* to be 180 gpd based on the language in Township Resolution 2017-A-1, Section 3.1, which provides, in relevant part:

> B. Each Domestic Establishment shall be billed as a separate entity based on EDUs. The minimum billing amount for each Domestic Establishment shall not be less than that determined for ONE (l) EDU. If two (2) or more families use separate cooking and/or toilet facilities in an [i]mproved [p]roperty, the sewer rates and other charges payable hereunder shall be computed as though each such family was a separate user with a separate connection to a [s]ewer.
>
> C. Each metered Non-Domestic Establishment ([c]ommercial, [i]ndustrial, [p]rofessional [o]ffices, [r]etail [s]tores, [c]hurches, [g]range [h]alls, [s]ervice [s]tations[,] [g]arages, [a]utomotive [r]epair [s]hops, [b]arber [s]hops, [b]eauty [s]hops, etc.) grid metered Multi-Use Establishment shall be billed for the use of the [s]ewer [s]ystem based on metered usage data collated by or on behalf of the Authority, except that **the billing amount during any billing period shall not be less than the billing amount for a single Domestic Establishment** determined for an equivalent billing period.

R.R. at 28 (emphasis added).

Township Resolution 2017-A-1's Estimated Usage Chart, Table 3-1, states that the minimum estimated usage for Non-Domestic Establishments is 180

gpd. Thus, since, pursuant to Section 3.1(c) of Township Resolution 2017-A-1, the billing amount for Non-Domestic Establishments must not be less than the billing amount for Domestic Establishments, Ebert opined that the *amount billed* for Domestic Establishments equaled 180 gpd and that residential users were billed at that rate. Ebert further explained that the Authority's purported 113.8 gpd *amount billed* could not be correct because if that gpd were an EDU, then the residential users throughout the system are paying 58% more for sewer treatment than the commercial users and, thus, would essentially be subsidizing the commercial users.

The Authority presented its Manager, Jamie Aston (Aston), who testified that because all residential users are charged the same flat rate regardless of the amount they use, Aston "took what was effectively the average usage per metered customer . . . in the [T]ownship [to determine an average *amount billed*] and compared that to the average usage per apartment in the complex." R.R. at 167. Aston calculated that the average residential user's use - the EDU - was 113.8 gpd. Aston related that the 180 gpd figure in Township Resolution 2017-A-1 was for planning purposes only, and not the *amount billed*.

Following the hearing, the Board hearing officer affirmed the Authority's denial of Act 43 relief to Water Polo. The Board hearing officer found that each Reserve apartment is defined as a *Domestic Establishment* under Authority Resolution 2017-A-01, and the Authority bills every Township Domestic Establishment customer a $52.00 per month or $156.00 per quarter flat rate, based on operational costs, not water consumption. The Board hearing officer further determined that based on the Authority's calculations using PAWC data, the average residential (Domestic Establishment) sewer rental customer in the Township uses 113.8 gpd of water. The Board hearing officer observed that the Authority compared Water Polo's usage (94 gpd) with the average usage of a Domestic Establishment

5

user (113.8 gpd) and found that each apartment at the Reserve uses 17.4% less water than the average Township household.

The Board hearing officer also found that the 180 gpd Ebert referenced is used only for planning purposes, not billing; there is no limit on sewer usage for Domestic Establishments and there are instances in which the Reserve greatly exceeds its 94 gpd average; the Authority must maintain its sewer capacity to treat these water usage peaks; and, the 180 gpd is not the *amount billed* because the Authority does not read water meters – thus, it is not actual usage.

The Board hearing officer concluded as a matter of law:

8. Applicants seeking Act 43 relief must show that "the ***amount billed*** exceeds ***actual usage*** by 30% or more." (Emphasis added.)

9. Act 43 does not define th[o]se terms[,] nor does it provide sewer authorities any guidance on how to calculate the adjustment, particularly in a situation where a flat rate sewer rate is used. []

10. The parties stipulate that Water Polo's "actual usage" is 94 gpd.

11. The "amount billed" is a flat rate of $52[.00]/month/EDU.

12. The "amount billed" is not based on any particular [gpd] of water usage. The flat rate of $52[.00]/month/EDU was established after a thorough rate study determined that this was [sic] amount needed to sustain operations of the Authority. []

13. Water Polo argues that the "amount billed" is 180 gpd/EDU. Water Polo did not present any Authority Resolution or other formal document proving that each Domestic Establishment is billed for 180 gpd. To the contrary, all residential units are billed at a flat rate.

. . . .

15. The Authority's decision to compare Water Polo's actual water usage with an average of the Authority's other residential customers to achieve the computation for any rate relief under Act 43 is reasonable.

. . . .

19. Water Polo does not qualify for Act 43 relief because it is serviced by [two] water meters, when Act 43 specifically provides that "[t]he owner of multiple residential units that are served by a ***single water meter*** may periodically request the authority [for relief]. . . ." (Emphasis added).

20. Based upon Act 43, applicants must show that "the amount billed exceeds actual usage by 30% or more.[" 53 Pa.C.S. § 5607(d)(9).]

21. Based upon the computation required by Resolution 2022-A-3, Water Polo['s] . . . customers use 17.4% less water than that used by the average household in [the] Township.

R.R. at 199-200. Accordingly, the Board hearing officer affirmed the Authority's decision denying Water Polo Act 43 relief.[5]

On September 29, 2023, Water Polo filed a petition for review in the trial court. On September 3, 2024, the trial court reversed the Board hearing officer's decision and granted Water Polo Act 43 relief. The trial court explained:

Act 43 does not define the term "amount billed." However, there is no indication in the language of the statute itself that the "amount billed" should involve a comparison between an apartment complex's water usage

---

[5] Pursuant to Section 754(b) [of the Local Agency Law, 2 Pa.C.S. § 754(b)], a reviewing court may look only to the evidence relied on by the fact-finder . . . . "Nowhere in Section 754 [of the Local Agency Law] is the reviewing court given general authority to make its own findings of fact and conclusions of law when the local agency has developed a full and complete record . . . ." [*In re*] *Thompson*, 896 A.2d [659,] 668 [(Pa. Cmwlth. 2006).]

*In re Nevling*, 907 A.2d 672, 674 (Pa. Cmwlth. 2006) (citation omitted).

and the average use of all residential customers in the [T]ownship. Rather, the implication is that the comparison should be between the amount of water/sewer usage that the apartment complex uses ([]actual usage[]) versus the amount of water/sewer usage for which they are billed ([] amount billed[]).

[Water Polo] provided expert testimony from [] Ebert, who is a professional engineer and provides services for fourteen (14) municipal sewer/water authorities. [] Ebert provided an analysis based on historic meter readings at [the Reserve,] as well as a review of the [Authority's] website and rate resolutions. He opined that the rate resolutions of [the Authority] all tie to an EDU equaling 180 [gpd]. This is confirmed by the standard for commercial billing, which sets a minimum amount of 180 [gpd]. Thus, [] Ebert provided his professional opinion that an EDU is 180 [gpd] based on information provided by [the Authority] on its website and in its various rate resolutions. [The trial court] find[s] that this approach is in keeping with the plain language of Act 43, and [the Authority] committed an error of law when it defined the "amount billed" as the average rate of water used by all residential users within [the] Township.

R.R. at 273. Observing that "[t]he parties agree that the flow from [the Reserve] on a per unit basis is 94 [gpd,]" the trial court held that Water Polo "is entitled to judgment in its favor as to its request for Act 43 relief because its actual use is more

8

than 30% less than the amount that it was billed."[6] R.R. at 274. The Authority appealed to this Court.[7]

The Authority contends that Water Polo is not entitled to Act 43 relief. The Authority argues that it properly billed its customers a flat-rate, which is permissible under the MAA,[8] and that, given the flat-rate billing, the proper method

---

[6] The trial court also noted:

> There seemed to be some disagreement as to whether [the Reserve] constituted multiple residential units that are served by a single water meter. However, it is clear that the apartment complex itself has a single water meter and the clubhouse, which is not a part of the instant matter, has a separate water meter. As such we find that [the Reserve] does fall within the definition of Act 43.

R.R. at 272 n.1. This Court agrees. This Court rejects the Authority's contention that Water Polo was not entitled to Act 43 relief because its property is serviced by more than one meter. The relevant Act 43 language applies to "[t]he owner of **multiple residential units** that are **served by a single water meter** . . . ." 53 Pa.C.S. § 5607(d)(9) (emphasis added). The record evidence reflects that although Water Polo's property is served by two meters, the *multiple residential units* are serviced by one meter while the clubhouse is served by the other meter.

[7] Where the trial court does not take any additional evidence, [this Court's] . . . review over the decision of a local agency is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the procedure before the local agency was contrary to statute, and whether necessary findings of fact are supported by substantial evidence.

*Appeal of Hall*, 317 A.3d 1115, 1119 n.3 (Pa. Cmwlth. 2024).

[8] This Court has held . . . that there is value in simply being connected to a sewer system. In *Scott Township Sewer & Water Authority v. Ease Simulation, Inc.*, 2 A.3d 1288 (Pa. Cmwlth. 2010), th[is] Court held that the fact that the user paid more for service than a neighbor did not make the rate *per se* unreasonable. *Scott Twp.*, 2 A.3d at 1291. In *Ack v. Carroll Township Authority*, 661 A.2d 514 (Pa. Cmwlth. 1995) . . . , [this Court] commented that "**rates need not be proportioned with exactness to [the] use made or the cost to the individual customer, so long as it is reasonably related to the cost of maintaining the service for all customers, and the customers challenging the rates receive 'some' benefit from the system**." [*Id.*] at 518. The charge should be reasonably proportional

to determine the *amount billed* for purposes of Act 43 is to consider the average gpd use among all those paying the flat rate. Applying such method, the Authority asserts that the record evidence established that average residential customers used 113.8 gpd (paying $52.00/month) while the Reserve residents averaged 94 gpd (paying $52.00/month). Thus, according to the Authority, the Reserve residents use 17.4% less water than the average Township resident and, accordingly, Water Polo does not meet the 30% threshold.

Initially, "[t]he object of statutory construction is to ascertain and to effectuate legislative intent." *Zelno v. Lyons*, 245 A.3d 1185, 1187 n.7 (Pa. Cmwlth. 2021). "Generally, the plain language of the statute 'provides the best indication of legislative intent.'" *McLaughlin v. Nahata*, 298 A.3d 384, 393 n.17 (Pa. 2023) (quoting *Miller v. Cnty. of Ctr.*, 173 A.3d 1162, 1168 (Pa. 2017)).

Here, the parties agree that Act 43 does not define the term *amount billed*. Nor does Act 43 describe the manner in which it is to be applied to fixed-price billing, where the Authority's charges have no specific correlation to a

---

> to the value of the service, rather than to the use made of the system.
> *In re Petition of City of Phila*[.], . . . 16 A.2d 32, 35 ([Pa.] 1940).

*GSP Mgmt. Co. v. Duncansville Mun. Auth.*, 126 A.3d 369, 373-74 (Pa. Cmwlth. 2015) (citation omitted; emphasis added). Further, "[w]here the classification of users has not been proved to be unreasonable and is clearly uniform, flat rate sewer rental which reasonably relates to the value of the service rendered may be applied[.]" *Chicora Commons, Ltd. P'ship, LLP v. Chicora Borough Sewer Auth.*, 922 A.2d 986, 993 (Pa. Cmwlth. 2007) (quoting *Patton-Ferguson Joint Auth. v. Hawbaker*, 322 A.2d 783, 786 (Pa. Cmwlth. 1974)).

In earlier litigation between the same parties, this Court held:

> [T]he Authority's rate system is reasonably intended to allocate the costs of sewer service among its residential users, while ensuring that sufficient funds are collected to cover the actual costs the Authority pays to maintain its sewage system. Therefore, . . . the monthly sewer charges the Authority imposed on Water Polo were both reasonable and uniform under the MAA.

*Water Polo I, L.P. v. W. Hanover Twp. Sewer Auth.*, 301 A.3d 1009, 1022 (Pa. Cmwlth. 2023) (record citation omitted).

particular customer's usage. Rather, "[t]he flat rate of $52[.00]/month/EDU was established after a thorough rate study determined that this was [the] amount needed to sustain operations of the Authority." R.R. at 199.

Act 43's plain language reflects a legislative intent to address inequity between customer residents of individual homes and customer owners of multiple residential units served by a single meter (in which residents traditionally use less services). Here, the Authority has divided the "cost of maintaining the service for all customers" equally amongst all Domestic Establishments by the imposition of a flat fee. *GSP Mgmt. Co. v. Duncansville Mun. Auth.*, 126 A.3d 369, 374 (Pa. Cmwlth. 2015) (quoting *Ack v. Carroll Twp. Auth.*, 661 A.2d 514, 518 (Pa. Cmwlth. 1995)). Thus, the flat rate the Authority charges residential customers does not reflect the *amount* of services used by those customers, and, accordingly the 180 gpd/EDU figure (used by the Authority for planning purposes) is not the *amount billed*. The Authority's decision to spread the operational cost equally among all Domestic Establishments necessitates use averaging of those same customers to associate a specific gpd with the fixed amount paid, to determine the *amount billed*.[9] This Court discerns no error in the Authority's analysis. Accordingly, the Authority correctly determined that Water Polo is not entitled to Act 43 relief.

---

[9] With respect to Ebert's contention that adopting the Authority's 113.8 gpd/EDU would be impermissible because it would mean that residential users throughout the system are paying 58% more for sewer treatment than the commercial users, this Court notes:

> So long as properties in a municipality are properly classified and there is no showing that the complaining sewer rent payer is discriminated against as compared with other members of his own class, he has **a very heavy burden** if he wishes to upset or modify rental by showing **that he is discriminated against with regard to members of some other class**.

*Coudriet v. Benzinger Twp.*, 411 A.2d 846, 848 (Pa. Cmwlth. 1980) (emphasis added).

11

For all of the above reasons, the trial court's order is reversed.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Water Polo, I, L.P.             :
                                     :
         v.                 :
                                     :
West Hanover Township   :
Sewer Authority,           :    No. 1283 C.D. 2024
               Appellant   :

## O R D E R

AND NOW, this 15th day of May, 2026, the Dauphin County Common Pleas Court's September 3, 2024 order (docketed September 4, 2024) is reversed.


_____
ANNE E. COVEY, Judge